UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN KANASOLA,

       Plaintiff,

v.                     6:16-CV-0264
                       (TWD)
COMM'R OF SOC. SEC.,

       Defendant.
_____

APPEARANCES:                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON    STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.       LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

    Currently before the Court, in this Social Security action filed by John Kanasola ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born in 1975, making him 37 years old at the amended alleged onset date and 39 years old at the date of the final Social Security Administration ("SSA") decision. Plaintiff has a 12th grade education and past work as an auto and truck mechanic. Plaintiff was insured for disability benefits under Title II until December 31, 2012. Generally, Plaintiff alleges disability consisting of knee pain, back pain, and bilateral hand pain.

   B.  **Procedural History**

Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on April 25, 2013. Plaintiff initially alleged disability beginning January 1, 2008, but later amended the alleged onset date to April 9, 2013.[1] Plaintiff's application was initially denied on June 26, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Hortensia Haaversen on April 17, 2014. On October 15, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-21.)[2] On January 20, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

---

[1] As the ALJ noted, Plaintiff's amended alleged onset date was after his date last insured of December 31, 2012, making the ALJ's dismissal of Plaintiff's Title II application proper. *See* HALLEX I-3-5-85 (instructing that an ALJ is permitted to dismiss certain issues in a case in certain circumstances, explicitly including when "the claimant withdrew the [T]itle II request for hearing and amended the alleged onset date after the date last insured").

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 25, 2013, the amended alleged onset date. (T. 15.) Second, the ALJ found that Plaintiff's bilateral chondromalacia patellae, degenerative signal medial meniscus of the right knee, degenerative changes of the lumbosacral spine, and acute gout are severe impairments, while his chronic obstructive pulmonary disease, hyperlipidemia, gastritis, and obesity are not severe. (T. 15-16.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 16.) More specifically, the ALJ considered Listing 1.02 (major dysfunction of a joint) and 1.04 (spinal impairments). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 416.967(b) except that the claimant can stand or walk for two hours in an eight-hour workday. The claimant can sit for at least six hours of an eight-hour workday, but for no more than an hour at a time.

(T. 16.) Fifth, the ALJ found that Plaintiff is unable to perform his past work based on the restrictions in the RFC. (T. 19.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including telephone order clerk for a food and beverage establishment, dispatcher, and telephone answering service. (T. 20-21.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff argues that the ALJ committed harmful error of law in failing to afford controlling weight to the opinion of treating physician Richard Sullivan, M.D. (Dkt. No.

9, at 6-8 [Pl. Mem. of Law].) Plaintiff argues that Dr. Sullivan's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," including the objective imaging reports and his own treatment observations. (Dkt. No. 9, at 6-7 [Pl. Mem. of Law].) Plaintiff also argues that, even if Dr. Sullivan's opinion is not entitled to controlling weight, the ALJ erred in failing to "explicitly and comprehensively discuss all of the factors outlined within the regulations" for weighing treating physician opinions and failed to provide good reasons for rejecting Dr. Sullivan's opinion. (Dkt. No. 9, at 7-8 [Pl. Mem. of Law].)

Generally, Defendant argues that the ALJ was correct in declining to afford Dr. Sullivan's opinion controlling weight because it was not supported by the clinical and laboratory evidence in the record. (Dkt. No. 11, at 5-6 [Def. Mem. of Law].) Defendant argues that the ALJ considered the required factors for determining the weight to which Dr. Sullivan's opinion was entitled, including Dr. Sullivan's specialty, his treatment relationship with Plaintiff, the medical imaging and treatment notes, and Plaintiff's reports of his own functioning at the hearing. (Dkt. No. 11, at 7 [Def. Mem. of Law].) Defendant also argues that it was proper for the ALJ to reject Dr. Sullivan's opinion where it seemed to be based on Plaintiff's subjective complaints because he properly found those complaints to be not entirely credible. (Dkt. No. 11, at 8-9 [Def. Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

4

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quotation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

5

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

III.  **ANALYSIS**

After carefully considering the matter of whether the ALJ failed to properly apply the treating physician rule to the opinion of Dr. Sullivan, the Court answers this question in the

negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 5-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

On June 17, 2013, Dr. Sullivan submitted a residual functional assessment, in which he opined that Plaintiff was limited to the following: sitting 20 minutes at one time and about four hours total in an eight-hour workday; standing 10 minutes at one time and standing and walking less than two hours total in an eight-hour workday; shifting positions at will from sitting, standing, or walking; taking unscheduled breaks approximately every 20 minutes; lifting and carrying 10 to 20 pounds rarely and less than 10 pounds frequently; frequently performing maneuvers with his head and neck; occasionally climbing stairs; rarely climbing ladders; and never twisting, stooping, crouching, or squatting. (T. 337-39.) Dr. Sullivan also opined that Plaintiff would likely be absent from work more than four days per month due to his impairments. (T. 339.)

The ALJ afforded little weight to this functional opinion, finding that the limitations Dr. Sullivan opined were "based solely on the claimant's subjective complaints and not treatment records," and noting that they did not "comport with medical imaging, which shows only mild degenerative changes, or Dr. Sullivan's conservative treatment plan for the claimant including exercise and basic pain medications." (T. 19.) In addition to these explicit reasons when discussing Dr. Sullivan's opinion, the ALJ included a detailed recitation of the treatment evidence, including the MRI studies related to Plaintiff's lumbar spine and knees. (T. 17-18.)

Plaintiff argues that the ALJ was incorrect in finding that Dr. Sullivan's opinion was not supported by the medical imaging and the objective medical evidence, pointing to a few selected pieces of evidence that he believes support a contrary finding. (Dkt. No. 9, at 6-7 [Pl. Mem. of Law].) However, this argument amounts to nothing more than a request for this Court to reweigh the evidence, something that is prohibited by the limited scope of this Court's review. *See Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9

(N.D.N.Y. Nov. 18, 2016) *adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)) (alteration in original); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). The ALJ provided a discussion of the evidence within the narrative of the decision that accounted for nearly every documented instance of treatment from the applicable period in the sparse record and that shows the evidence upon which the ALJ relied when making her determination. (T. 17-18.) There is nothing in the ALJ's discussion or the record as a whole that suggests that her consideration of the treatment evidence was incomplete or unreasonable, and her analysis shows that there was substantial evidence to support her finding that Dr. Sullivan's opinion was not supported by the objective medical evidence in the record as a whole. *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 266 (N.D.N.Y. 2009) ("If supported by substantial evidence, the Commissioner's finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'") (quoting *Rosado*, 805 F. Supp. at 153).

Plaintiff also argues that the ALJ failed to consider the required factors from 20 C.F.R. § 416.927(c), instead relying on her own assertions that Dr. Sullivan's treatment of Plaintiff was conservative. (Dkt. No. 9, at 7-8 [Pl. Mem. of Law].) Plaintiff asserts that "there is no

9

indication in the records" that Dr. Sullivan's opinion was based on Plaintiff's subjective reports. (*Id.*) Plaintiff argues that the reasons the ALJ did provide did not constitute good reasons that were sufficient to reject Dr. Sullivan's opinion. (*Id.*) However, Plaintiff's arguments are not persuasive for a number of reasons.

First, contrary to Plaintiff's argument, the ALJ did appropriately consider the required factors when assessing Dr. Sullivan's opinion. The ALJ noted that Dr. Sullivan was Plaintiff's primary care physician and that he had been treating Plaintiff since at least September 30, 2011.[3] (T. 17.) As noted previously, the ALJ also provided a detailed analysis of the medical evidence, most of which was treatment from Dr. Sullivan, and this analysis is consistent with the ALJ's conclusion that Dr. Sullivan's opinion appeared to be based on Plaintiff's subjective complaints due to a lack of support from the objective findings. On most examinations, Dr. Sullivan noted no acute distress, normal knee range of motion with normal lateral ligamentous stability, normal feet and lower extremities, normal neurological signs, and no swelling or tenderness in the knees, though there was a substantial amount of crepitus with flexing consistent with chondromalacia patellae. (T. 262, 265, 269, 355, 378.) One occasion on December 4, 2013, Dr. Sullivan did note that Plaintiff had an antalgic and limping gait, though he was not using a cane. (T. 353.) Dr. Sullivan also noted tenderness and swelling in Plaintiff's right foot on March 27, 2015, but

---

[3] The record does show two instances of treatment with Dr. Sullivan between June 17, 2010, and September 30, 2011, that the ALJ did not discuss. (T. 265-72.) However, the June examination shows lumbar spine findings identical to most of Dr. Sullivan's later examinations and an examination in October showed everything essentially within normal limits. (*Id.*) Consequently, even if the ALJ failed to consider the full length of Dr. Sullivan's treatment, the low frequency of that prior treatment and the lack of additional findings supporting Dr. Sullivan's opinion in those earlier treatment notes prevent this oversight from constituting a legal error in assessing Dr. Sullivan's opinion, as they do not suggest that the ALJ's conclusions would have been different had he explicitly recognized the longer treatment relationship.

this was related to an acute flare of gout rather than a representation of his chronic symptomology. (T. 375, 378.) A physical therapy evaluation on May 8, 2013, revealed abnormal posture when seated due to back pain, minimal to moderate loss in various lumbar ranges of motion, 4/5 knee strength with flexion and extension, pain and difficulty with walking on heels and toes, and positive bilateral straight leg raising at 45 degrees. (T. 359-60.) Although these examinations show some abnormalities related to Plaintiff's lumbar spine and knees, they do not contradict the ALJ's clear finding that the objective medical evidence as a whole did not support the extent of Dr. Sullivan's opined limitations. *See Aldrich v. Astrue*, 5:08-CV-0402 (TJM), 2009 WL 3165726, at *7 (N.D.N.Y. Sept. 28, 2009) (finding that the ALJ was entitled to afford less than controlling weight to the opinion of a treating physician who appeared to rely on the plaintiff's subjective complaints more than any diagnostic or clinical evidence).

The imaging studies also do not support Plaintiff's claims that the objective imaging was consistent with the range of restrictions included in Dr. Sullivan's opinion. An x-ray of the lumbar spine from April 9, 2013, showed minimal osteophytes anterior to the L2 and L3 levels. (T. 231.) An x-ray of the left knee from the same date showed normal alignment and joint spaces, no joint effusion, and normal soft tissue and osseous structures. (T. 232.) An x-ray of the right knee from the same date showed slight squaring of the medial joint margins and minimal degenerative changes. (T. 232-33.) An MRI of the right knee from December 20, 2013, showed a small multiloculated popliteal cyst in the medial popliteal fossa and a degenerative signal in the medial meniscus. (T. 342.) The ALJ explicitly discussed all of these imaging studies and the minimal findings within her discussion of the evidence, making it clear that she considered them, and she specifically found that the objective imaging was not consistent with Dr. Sullivan's opinion. (T. 17-19.)

11

Second, as Defendant notes, it was proper for the ALJ to reject Dr. Sullivan's opinion where it appeared to be based on Plaintiff's subjective reports because the ALJ found Plaintiff's subjective reports to be not entirely credible. (Dkt. No. 11, at 8-9 [Def. Mem. of Law].) As Defendant notes, although Plaintiff testified he was limited to a disabling extent, he also testified he was able to wash dishes, sweep the floor, go out for social activities twice per month, and make his own meals daily. (Dkt. No. 11, at 9 [Def. Mem. of Law].) The ALJ's discussion of the treatment evidence shows that ALJ found Plaintiff's allegations of disability were not consistent with the extent of limitations substantiated by the medical evidence or with the type and extent of treatment Plaintiff received for his impairments. (T. 17-19.) Consequently, there is nothing inconsistent between the ALJ's stated credibility assessment and her rejection of Dr. Sullivan's opinion, and there is no legal error in the ALJ's finding that Dr. Sullivan's opinion was entitled to little weight due to its apparent reliance on Plaintiff's subjective reports. *See Aldrich*, 2009 WL 3165726, at *7; *see also Dailey v. Comm'r of Soc. Sec.*, No. 5:14-CV-1518 (GTS/WBC), 2016 WL 922261, at *5 (N.D.N.Y. Feb. 18, 2016) (noting that "[a]n ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence"), *adopted by* 2016 WL 917941 (N.D.N.Y. Mar. 10, 2016) (citing *Major v. Astrue*, No. 12-CV-304S, 2013 WL 2296306, at *5 (W.D.N.Y. May 24, 2013); *Ford v. Astrue*, No. 1:06-CV-1227 (LEK), 2010 WL 3825618, at *9 (N.D.N.Y. Sept. 24, 2010)); *see also Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012).

Third, the ALJ's citation to Dr. Sullivan's conservative treatment plan as part of her analysis was also not improper, and the record shows that Plaintiff was typically only prescribed mild non-steroidal anti-inflammatory drugs, such as naproxen or salsalate, for pain relief.

Although the record does substantiate his testimony that he had also been prescribed prednisone,[4] this was for an acute flare of gout, not pain control related to his spine or knee symptoms. (T. 364, 375, 378.) It was not unreasonable or improper for the ALJ to determine that such a limited treatment plan was inconsistent with the extensive functional restrictions Dr. Sullivan opined when, as here, the ALJ combined that determination with an assessment of the medical treatment evidence as a whole, including the objective imaging studies showing minimal findings. *Burgess*, 537 F.3d at 129 ("The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled if that fact is accompanied by other substantial evidence in the record, such as the opinions of other examining physicians and a negative MRI.") (citing *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995)). Because the ALJ provided multiple clear reasons for affording little weight to Dr. Sullivan's opinion that were supported by substantial evidence and her decision shows she appropriately considered the factors required in the regulations, her finding is consistent with the applicable legal standards and supported by substantial evidence.

The fact that the ALJ rejected the only physical functional opinion from a medical source does not mean that her RFC assessment is unsupported by substantial evidence. Contrary to Plaintiff's representative's arguments at the administrative hearing, an ALJ is not required to afford significant weight to a treating physician's opinion even if that opinion is not consistent with the evidence simply because the source is a treating physician and there is no other

---

[4] Prednisone is a corticosteroid drug used to treat inflammation produced by various diseases and causes. *Prednisone*, NATIONAL INSTITUTE OF HEALTH, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/druginfo/meds/a601102.html (last visited May 10, 2017).

enlightening functional opinion evidence.[5] (T. 31-32.) It is the ALJ's role as fact-finder to weigh all the evidence and come to a conclusion; the fact that she does not rely on any one opinion when doing so is not error unless her findings are unsupported by substantial evidence. 20 C.F.R. § 416.945 (indicating that it is the duty of the ALJ, not a medical source, to formulate a claimant's RFC); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citation omitted). Here, there was sufficient treatment evidence for the ALJ to determine that Plaintiff was capable of performing a range of light work, and the ALJ's RFC determination is supported by a medical record that shows limited treatment and few significant abnormalities.

For all these reasons, the weight the ALJ afforded to Dr. Sullivan's opinion is supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

---

[5] There were two other opinions present in the record: Dr. Sullivan indicated in a physical therapy request from April 9, 2013, that Plaintiff had no restriction in lifting, extremity weight-bearing, or range of motion, and on May 9, 2013, Phillip DeBruin, P.T., acknowledged Dr. Sullivan's notation of lack of precaution restrictions, though he did note that, based on the physical therapy examination performed, Plaintiff's functional capabilities were "limited by his perception of pain, his perception of functional loss and fear of making his underlying condition worse." (T. 258, 357, 361.) The ALJ afforded both of these opinions little weight, findings that Plaintiff did not challenge. (T. 18.) Neither of these opinions provide evidence showing that Plaintiff was more significantly limited than accounted for in the RFC assessment and therefore do not undermine the substantial evidence supporting the ALJ's findings.

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 10, 2017
      Syracuse, New York

*/s/ Thérèse Wiley Dancks*
Thérèse Wiley Dancks
United States Magistrate Judge